Good morning, your honors. May it please the court. My name is Anna Benvenue, and I'm appearing on behalf of Petitioner Janeef Ali. The board and immigration judge in this case committed legal error by concluding that the country conditions evidence in the record rebutted Mr. Ali's presumption of a well-founded fear of future persecution. The board decision claims to be a Burbano Affirmance, but then continues on, so this court's obligated to review both. The BIA committed two significant legal errors that require this court to remand. First, the board erred by placing the burden on Mr. Ali. Under the regulations, once past persecution has been established, Mr. Ali is required Mr. Ali is no longer required to prove anything, and it's the government that must show that he has his well-founded fear has been rebutted. The board states Mr. Ali's burden that he's failed to demonstrate he's at particular risk in Fiji and that his predicament is appreciably different from the dangers faced by his fellow Indo-Fijians. This was improper. The board first needed to make a finding that there had been a fundamental change in circumstances and then go on to conduct an individualized analysis of whether Mr. Ali still faced a well-founded fear of future persecution. The board did not conduct the proper individualized analysis that's required under Lopez v. Ashcroft. The board cites a number of statements. They say the numerous articles in the record refer to violence against Hindus, which Mr. Ali is not, and that the general crime and economic problems in Fiji. These statements would be relevant in this case if Mr. Ali hadn't already established past persecution. However, these statements are irrelevant. They don't help the government rebut his presumption. And therefore, the case has to be remitted so the board can do that proper analysis. Similarly, the board mentions remaining articles that don't assist the government in rebutting Mr. Ali's presumption. The IJ decision fails in similar ways. The IJ goes through a kind of summary of a bunch of the articles and evidence in the record about Fiji in 2006 when he rendered his decision, but then he fails to do that first step of the analysis. Has there been a fundamental change in circumstances? He doesn't compare those cases, the current situation, to what it looked like when Mr. Ali left. Then similarly, he fails to conduct a proper individualized analysis. He states, quote, Endo-Fijians in Fiji today generally do not fear for their lives or freedom. That's not the individualized analysis he's required to do. He needed to consider Mr. Ali's specific circumstances, that he was personally persecuted by the military, and whether that evidence that remains on the record is enough to rebut his well-founded fear. Molina-Estrada specifically directs that generalized country conditions are not enough, and that is essentially what the IJ relied on this case. So for those reasons, the original decision was improper, and this Court has to rebut. Similarly, the Board failed and abused its discretion in its consideration of Mr. Ali's motion to reopen. Here, the Board didn't look at the evidence presented at the original hearing and the evidence presented in the motion to reopen, and that was an error. In this Court's decision in Bassin v. Gonzalez, which is at 423 F3rd 977, this Court held that a motion to reopen must determine whether in light of the evidence presented at the original hearing and that which was likely to be proved through new evidence to be presented at a subsequent hearing, were the motion to reopen be granted, has the Petitioner established a prima facie eligibility for asylum. And in this case, the Board simply addressed the new evidence. They didn't look back to what happened with Mr. Ali. But what was there in what happened to him before that was special to him, that was separate from what might happen to his fellow Indofijians? Well, Mr. Ali, following the 1987 coup, was targeted both as an Indofijian and by the military. Why? On account of his Indofijian ethnicity and Muslim religion. When the military attacked him at his home, they destroyed his prayer room specifically and physically attacked him. And those situations need to be considered. They were just completely ignored by the Board. Well, the change of conditions is what? Well, in this case, Mr. Ali, the change is the Fiji coup. Different government. Yes, the 2006 coup. So presumably, that military would not be after the record seems to show that the Indofijians are not targeted anymore. Well, yes. They're discriminated against but not targeted. Right. But the coup was by the military and the country conditions evidence in the record suggest that ethnic divide was the root of all four coups in Indonesia. I mean, I'm sorry, in Fiji. And so the fact that the root of the coup, the basis of the coup, was similar indicates that Mr. Ali perhaps would have a fear. But more importantly, the Court just simply failed to acknowledge at all the past and I think is required to under the case law of the circuit look at what happened in the past in 1987 and didn't, just ignored it altogether. They also ignored his declaration and only looked at the country conditions evidence submitted. So if – okay, I won't push you. Okay. I'll reserve the rest of my time if there's no other questions. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Drew Brinkman on behalf of the Attorney General. Your Honors, in this consolidated case, Mr. Ali seeks review of two decisions by the Board, one denying his application for asylum and one denying his motion to reopen. Mr. Ali is a citizen of Fiji and an ethnic Indian. In 1987, there was a coup in Fiji during which many ethnic Indians, including Mr. Ali, were harmed at the hands of ethnic Fijians. Mr. Ali came to the United States shortly after the coup and he applied for asylum. In 2006, an immigration judge conducted a hearing and found that while Mr. Ali had suffered past persecution during the 1987 coup, conditions had changed and improved in Fiji since that time such that he no longer had a well-founded fear of future persecution. Mr. Ali appealed the immigration judge's decision to the Board, and the Board dismissed the appeal in 2007. Shortly after the Board issued its decision, Mr. Ali filed a motion to reopen, claiming that a new hearing was necessary because there had been another coup in Fiji in 2006. The Board denied the motion because it failed to show how the 2006 coup was relevant to his claim for asylum. The Court reviews the Board's finding that Mr. Ali is ineligible for asylum under the substantial evidence standard, and the Court reviews the Board's denial of the motion to reopen for an abuse of discretion. I'm going to focus my argument on the Board's finding that he was ineligible for asylum. Now, the issue there is whether substantial evidence supports the Board's finding that conditions improved in Fiji since the 1987 coup such that he no longer has a well-founded fear of persecution. Isn't there a slightly different question that's argued by the petitioner? Now I'm focusing on the motion to reopen. It appeared that the Board only looked at the new evidence, which in most cases would not be improper, but it didn't take into consideration the presumption of past persecution, at least in its decision. To what extent to the Board does the Board on a motion to reopen need to consider the presumption of past persecution? Because usually we get a motion to reopen where there has been a denial of asylum, there's no presumption granted. Here it's slightly different. So to what extent is the Board obligated to look at past persecution? The Board has to look at the case as a whole in the context of he established past persecution. The presumption doesn't really work the same because we're now at a post-trial stage. So the Board's looking, has he presented enough evidence to merit a new hearing in the context of the presumption? Well, the presumption, it's a tricky question. The presumption, I think, applies at the trial stage once he's established past persecution. But then once a decision is rendered at the trial stage and we're at a motion to reopen stage, the Board's looking at just this new evidence in the context of the prior decision. But doesn't it, because the Board has to look at the entire case and it has to say, well, does this make a difference, doesn't it have to measure the new evidence against the presumption afforded by past persecution in cases like this? Your answer seems to be no, but it seems to me that's contrary to what the Board ought to be doing. It has to figure out what he's got a case on. And you start with the presumption that he has a well-founded fear of future persecution that the government must revive. Right? But the Board's not really looking. I think I can answer the question a different way. I think we're splitting hairs because the evidence presented with the motion to reopen actually undermines his asylum claim. The 2006 coup, the person who took power actually took power to support the ethnic Fijians or the ethnic Indians. I can't remember the man's name, but he was a general and he thought the ethnic Indians were being mistreated by the then-current prime minister. And he took power in 2006 essentially to make conditions better for the ethnic Fijians, such as Mr. Ali. So that can't help his claim in any sense. There would be no reason to have a new hearing if the only evidence undermines his claim. So we can avoid, I guess, this tricky question. Well, it's not so tricky. I mean, it just seems to me that the Board should have said, okay, we apply that we're considering the case as a whole, we have the presumption of past persecution, and we have to consider whether or not the new evidence can rebut, is sufficient to either rebut it or not rebut the presumption. It looked, I mean, I'm just saying that regardless of how they reach the decision, if they use the improper analysis, then we ought to send it back and, say, reexamine it. And it appears to me that they may have not taken into consideration the presumption, which would be understandable in a sense, because most cases come up on rehearing without any past persecution presumption. Another way to go ahead. You're correct in saying that the Board didn't articulate the presumption applied in the first case. We're applying the presumption again here. The Board kind of jumped to the ultimate issue of is this evidence sufficient to merit a new hearing, assuming that the presumption did apply or not. And there is a presumption that the agencies apply the correct law. The past persecution presumption is pretty commonly applied in administrative proceedings. It's not something that's unusual to them. They didn't articulate it, so I can see your worry that maybe they missed it. But given that it's a pretty common thing, pretty common legal concept that's applied by the Board, and given that the evidence that the Petitioner submitted with the motion to reopen was so weak, I don't think that that merits a remand on the motion to reopen part. Also, I think we've covered the motion to reopen enough. I'll jump back to the ineligibility for asylum decision. What's your response to the issue of whether the analysis was sufficiently individualized? We would say it was sufficiently individualized. The courts kind of handed out decisions. The individualized analysis, it's not totally clear what the Board has to do or the immigration judge has to do. But in Kumar v. INS, which we cite in our brief, essentially the Petitioner was in circumstances similar to this. He was harmed during the 1987 coup. And then the Board relied on the State Department report, similar to here, and the Court said that's enough. There's been changed country conditions. There's substantial evidence of changed country conditions. And similar cases that are good for us on that issue, Gonzalez v. Hernandez or Gonzalez-Hernandez v. Ashcroft. Do you think the law is not clear on what's? Well, it's kind of a spectrum, I guess. Sometimes I shouldn't have said that. I think it's hard to articulate what the individualized analysis, what that standard means is all I meant by that. But in this case, the Board met that. He's an ethnic Fijian. The Board talked about ethnic Fijian country conditions in the State Department report. In Kumar, the Court said that's essentially enough. And the two cases I was going to refer to, the Court said the country report was sufficient to show change of country conditions, even where it's ambiguous and contradictory. Political change in a country is a highly complex matter. And the Court should defer to the Board's expertise in applying the country report to the case. So they were talking about the Petitioner's claims specifically, which was this ethnicity that's individualized. Is there anything different than they would have in any case involving someone with his ethnicity? Well, in other cases where involving ethnic Fijians where the Court has remanded after the 1987 coup, the alien continued to be harmed for maybe five years. And the Court then looked at a country report from 1994. So it was the Petitioner had been harmed, and maybe two years later, the Board's looking at a country report and says, well, it's changed country conditions. And this Court said, well, no, maybe the conditions are generally better, but this guy's been harmed after the coup several times, and you didn't take that into account. Here, we just have he was harmed during the coup. Right. And he wasn't harmed because he left. He left. I mean. Yeah, I mean, it's kind of hard for him to make that kind of case. This looks almost like boilerplate, you know, after the situation now is there's discrimination, but no persecution and things are better. And there's nothing that ties it to him. It's really related to the first issue, I guess. His claim was a fairly generic claim. Well, except that he's got some presence of the military, which we don't see in a lot of Fijian cases where you have direct action against him by the military. So it's a bit of a different case than we see. And we understand that conditions in Fiji are volatile. They've gone back and forth for many years. The other difference with his case is that it spanned 20 years until the IJA issued his decision, whereas the case where the Court was not happy about it was shortly after the 1987 coup. And it appears from the evidence that conditions in Fiji, while they've been a little volatile, they've been volatile going upward. If the Court had said those things, I suppose it would be a different case. Okay. Your time has expired. Thank you. Thank you. Thank you. In this case, I think it's clear that on both points it has to be remanded. While the board's decision may have come out differently had they done the proper analysis, that's not the inquiry here. What do you understand the individualized analysis to require? I think in the case Popova at 273, Fed 3rd, 1251, this Court did what could be considered a proper individualized analysis. It specifically went through a detailed account of the exact country conditions that were relevant to the Petitioner in that case, and then evaluated what exactly had happened to the Petitioner and whether or not what the current situation in the country is would impact this particular Petitioner's facts. And I think that's just completely absent from the board's decision. If they had done that, what would they have said? I mean, is there any information about that? Well, I think that they would have needed the I.J. It seemed like the I.J. got a start to doing it. He summarized a lot of the country conditions, but then he just stopped short of actually saying then, this is what this particular Respondent's facts are and that's how they apply in the light of these current conditions. And it's just it's missing the analysis section. So it's just not putting in some facts, even though the outcome wouldn't have been any different? Well, we can't really say whether the outcome will be different, and it's not this Court's ability to say so. The fact is the individualized analysis was absent, and this Court can't do it themselves. That was made clear from INS v. Ventura. And unless the board wants to do a proper individualized analysis, this Court, which could then review it had it done that, can't come to the outcome yet. Similarly, on the motion to reopen, while the outcome could have been the same had they conducted the proper analysis, this Court can't just let the step be bypassed. It has to remand so that this Court can look, did the BIA actually evaluate past persecution, and would that change the outcome? And even if it wouldn't, this Court has to remand. Right. So the relief you're seeking is not an outright grant. It's a remand for reanalysis. Yeah. I don't think this Court can. Unfortunately, I wish I could seek that. But I think the case law requires that this Court remand. Okay. Thank you. Thank you. The case just argued is submitted for decision.
judges: Adelman, Schroeder, Thomas